**William K. VanCanagan**
**Trent N. Baker**
DATSOPOULOS, MacDONALD & LIND, P.C.
Central Square Building
201 West Main Street, Suite 201
Missoula, Montana 59802
Telephone:  (406) 728-0810
Facsimile:  (406) 543-0134
Email:  bvancanagan@dmllaw.com; jjohnson@dmllaw.com;
emiller@dmllaw.com
tbaker@dmllaw.com; kfaust@dmllaw.com

-and-

**Donald V. Snavely**
SNAVELY LAW FIRM
P.O. Box 16570
Missoula, Montana  59808
Telephone:  (406) 721-8899
Email:  snavely@montana.com

Attorneys for Plaintiff, Avenue C Apartments, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| AVENUE C APARTMENTS, LLC, a Montana limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE CINCINNATI INSURANCE COMPANY, a corporation; and JOHN DOES 1-10,<br><br>Defendants. | Cause No.: _____<br><br>**COMPLAINT and**<br>**JURY DEMAND** |

COMPLAINT AND DEMAND FOR JURY TRIAL                                           Page 1

Plaintiff, Avenue C Apartments, LLC ("Plaintiff"), for its claims against the defendants named herein, alleges as follows:

## PARTIES/JURISDICTION/VENUE

1. Plaintiff is a limited liability company organized under the laws of the State of Montana. Plaintiff owns a multi-unit residential apartment project located in Billings, Montana which suffered a property loss which is the subject of this case. Plaintiff is incorporated in the State of Montana.

2. Defendant, the Cincinnati Insurance Company ("Cincinnati") is believed to be a corporation engaged in business as a commercial insurer, among other things. Cincinnati is believed to be an Ohio corporation with its principal place of business located in Fairfield, Ohio. Cincinnati is eligible to issue insurance policies to companies doing business in Montana. Cincinnati issued to Plaintiff the insurance policies which cover the damage to Plaintiff's property which is the subject of this case. Cincinnati is believed to incorporated in the State of Ohio.

3. The true names and capacities of Defendants Does 1-10 are unknown to Plaintiff, who therefore sues these defendants under these fictitious names. Plaintiff believes that some of the Doe defendants are individuals, corporations, partnerships, and other legal entities which directly participated in the acts and omissions by which Plaintiff was injured, or are responsible for those acts and omissions under theories of agency, respondeat superior, or similar theories. When

the true names, capacities and involvement in the events which are the subject of this case of Defendants Does 1-10 have been ascertained by Plaintiff, appropriate amendments of this Complaint will be filed to substitute the same.  Cincinnati and Does 1-10 shall collectively be referred to herein as the "Defendants".

4. The amount in controversy in this case exceeds $75,000.  Plaintiff and Cincinnati incorporated in different states.  This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a)(1).  Venue for this action is proper under Local Rule 3.2(b) of this Court and M.C.A. §§ 25-2-121(2)(c) and 25-2-122(1)(b) and other provisions of Montana law.

## GENERAL ALLEGATIONS

5. Plaintiff owns real property located at 1607 17th Street West, Billings, Montana upon which it constructed a 126-unit luxury apartment building called Avenue C Apartments (the "Project").

6. By contract with an effective date of November 13, 2015, Plaintiff hired Jackson Contractor Group, Inc. ("Jackson") to construct the Project.

7. A temporary certificate of occupancy was issued for a portion of the Project in August of 2017.  The Project was substantially complete and a final certificate of occupancy was issued in October of 2017.

//

//

8. Plaintiff purchased from Cincinnati commercial property coverage for the Project, bearing policy number ECP 045 50 20/EBA 045 50 20, with an effective date of August 17, 2017 (the "Policy").

9. On November 14, 2017, Jackson filed a demand for arbitration against Plaintiff, seeking damages for alleged breach of contract, and seeking arbitration of those claims before the American Arbitration Association in AAA Case No.: 01-17-0006-9244 (the "Arbitration").

10. In and around January 2018, Plaintiff learned of pervasive water damage and related consequential damages to the Project.

11. Plaintiff and its property manager immediately commenced efforts to investigate, stop and repair those damages.

12. These efforts included the evacuation and relocation of tenants from all units on the fourth, uppermost, floor of the Project, and a number of units below, to other living quarters, and required the demolition and removal of a substantial portion of the interior walls, ceilings and insulation of the buildings of the Project which were damaged.

13. On March 14, 2018, a property loss notice was submitted to Cincinnati on behalf of Plaintiff indicating that the buildings of the Project sustained water and related consequential damages in several areas, and that the approximate date of loss was January 5, 2018.

14. Plaintiff also notified Jackson of the water and related damage, and on April 30, 2018 asserted a counterclaim against Jackson in the Arbitration for, among other things, Jackson's role in causing or contributing to the water and related consequential damage.

15. On March 23, 2018, Eric Highlander ("Highlander"), representing himself to be a claims representative for Cincinnati, advised Plaintiff's representatives that he had been to the Project, inspected the damages and noted severe and extensive damage to the fourth floor. He also noted that a restoration company had been brought in to assess the situation and mitigate damages. Thereafter, Highlander was directly involved in the handling of Plaintiff's claims under and related to Cincinnati's insurance policy for Plaintiff.

16. Cincinnati retained a company named McLarens to adjust Plaintiff's claims. On April 18, 2018, McLarens advised Plaintiff's representatives that Cincinnati was also retaining the engineering firm of Young & Associates to investigate possible causes of loss for various water and related consequential damages, and that representatives from McLarens and Young & Associates would inspect the Project on April 24, 2018.

17. Plaintiff, through counsel, wrote to McLarens on April 30, 2018 and to Cincinnati on May 4, 2018 providing both with copies of the architect's initial scope of repairs and estimated cost, and the notice of claim sent to Jackson's

insurer. At the same time, Plaintiff advised Cincinnati and McLarens of Plaintiff's position that the entire property loss and business losses were covered by the Policy, and demanded that Cincinnati pay the claim and seek subrogation against Jackson and its subcontractors. These letters further advised Cincinnati and its consultant that the Project was "in serious peril, and if all of the damaged units are not ready for leasing by mid- June, the insured will sustain substantial covered damages for, inter alia, lost revenue," and that "if this leasing season is missed many of the damaged units will remain unleased for another 10-12 months, thereby depriving the insured of rental income and compromising the overall investment," and that Cincinnati's prompt action on the claim was essential to Plaintiff's obligation to mitigate damages to the Project.

18. On May 18, 2018 Plaintiff's counsel received communications from Cincinnati's outside coverage counsel, Mr. Vincent Velardo, requesting all future communications be directed to him.

19. On July 17, 2018 Plaintiff, through counsel, provided Mr. Velardo with a copy of correspondence from Jackson's attorney which indicated that Jackson's position was that the water damage was covered by the Policy and that the construction contract provided that Plaintiff waived claims against Jackson for claims covered by the Policy. Plaintiff requested Mr. Velardo to provide Cincinnati's coverage position in response, also advised Mr. Velardo that the

claims between Plaintiff and Jackson would be mediated in Missoula, Montana beginning August 20, 2018, and provided him with the contact information for the mediator.

20. On July 26 and 27, 2018, Cincinnati's consultants from Young & Associates performed additional visual and destructive testing at the Project.

21. A July 30, 2018 email from Mr. Velardo to Plaintiff's attorneys indicated that he had received the foregoing communications and would respond as soon as possible.

22. On August 9, 2018, by email from counsel, Plaintiff provided Mr. Velardo with a copy of an order from the Arbitration joining as a party Plaintiff's representative, CDK Enterprises Inc. ("CDK"), and correspondence from Jackson's attorney asserting that CDK is an insured under the Policy and subject to liability coverage under the Policy for Jackson's claims against CDK. Plaintiff requested Cincinnati to provide a response prior to the mediation beginning on August 20, 2018.

23. An August 13, 2018 email from Mr. Velardo informed Plaintiff's attorneys that McLarens had not completed its report and "has requested additional information from Avenue C" and therefore, Cincinnati could not make a final coverage determination but would be willing to have a representative "attend the mediation by phone in order to monitor the underlying action."

24. In an August 13, 2018 email to Mr. Velardo, Plaintiff's attorneys requested that Mr. Velardo provide a copy of McLarens' request for additional information.

25. In an August 14, 2018 email, Mr. Velardo indicated that McLarens "will follow up directly with you."

26. In an August 15, 2018 email to Mr. Velardo, Plaintiff, through counsel, advised that Cincinnati has had more than enough time to investigate this claim, that Plaintiff has suffered property damages and is suffering ongoing business losses which are covered by the Policy, that refusing to participate meaningfully in the mediation and requesting additional information more than five months after receiving notice of the claim is a violation of Montana's Unfair Trade Practices Act, that Plaintiff expected Cincinnati to meaningfully participate in the mediation, and that Plaintiff would take steps necessary to protect its interests if its insurer failed to do so.

27. In an August 17, 2018 email, Mr. Velardo again stated that McLarens had requested additional information and that Cincinnati had not received any reports, mediation submissions or claim support.

28. Mr. Velardo's August 17, 2018 email was the first communication on behalf of Cincinnati indicating that Cincinnati wanted additional reports, mediation submissions or claim support.

29. Even though Plaintiff had previously provided Cincinnati and its consultant with the architect's initial scope of repairs and estimated cost, it again provided that information and additional material through counsel by email on August 19, 2018, and again demanded that Cincinnati meaningfully participate in the mediation.

30. It was not until August 21, 2018 that Plaintiff received McLarens' request for information, seeking only financial information regarding Plaintiff's business losses.

31. Plaintiff provided the information requested by McLarens on August 22, 2018.

32. The mediation regarding the Arbitration claims lasted from August 20 through 24, 2018 and involved multiple parties and counsel, including Plaintiff, Jackson, two subcontractors, the builder's risk insurer, the liability insurer for Jackson and the subcontractors, and the excess liability insurers for Jackson and the subcontractors.

33. The Policy issued by Cincinnati was at all times relevant to the Arbitration, and remains in full force and provides coverage with respect to damage to the Project and the claims in Arbitration.

34. Despite demand, the Defendants failed and refused to acknowledge coverage or extend the indemnity benefits under the Policy, and the Defendants

failed to meaningfully participate in the mediation, all of which compromised Plaintiff's ability to complete repairs to the Project and interfered with Plaintiff's attempt to resolve the dispute in Arbitration.

35. The wrongful and unreasonable conduct of the Defendants violated their common law and the statutory duties to Plaintiff.

36. As a result of Defendants' wrongful conduct, Plaintiff has incurred and will continue to incur special and general damages including, without limitation, compensation due under the terms of the Policy, out-of-pocket litigation costs and fees paid to their attorneys, travel costs, lost use of the Project, costs of repair and remediation of the Project and the costs of financing the same, lost interest, lost income, lost business opportunities, and lost use of the settlement funds, all in amounts to be determined.

37. Defendants acted and continue to act with actual malice, as defined by MCA §27-1-221, and should be assessed punitive damages for the sake of example and for the purpose of punishing them, and to educate them and other insurance companies and adjusters similarly situated that conduct of this type will not be allowed by the Courts and juries of Montana.

38. Plaintiff seeks awards of special, general, compensatory and punitive damages from the Defendants to the full extent allowed by Montana law.

/ /

## COUNT 1 – BREACH OF CONTRACT

39. Plaintiff incorporates Paragraphs 1 through 38 above as if fully set forth here. This claim is brought against Cincinnati.

40. Pursuant to Montana law, the Defendants had contractual duties to act honestly and observe reasonable commercial standards of fair dealing and trade in handling Plaintiff's claims under the Policy and arising out of its relationship with Defendants. The Defendants also had a duty to not utilize discretion granted to them to deprive Plaintiff of the benefits it bargained for under the Policy.

41. The Defendants have violated and continue to violate their duties and obligations owed to Plaintiff by virtue of the Policy, and as such breached the contract of insurance with Plaintiff by failing to timely and completely investigate Plaintiff's claims, by wrongfully refusing to acknowledge coverage and extend the indemnity benefits under the Policy in payment of those claims, and by wrongfully interfering with and manipulating mediation and potential settlement in the Arbitration.

42. As a result of Cincinnati's wrongful failure to perform its obligations under the insurance Policy as promised and represented, and its obligation to act in good faith with Plaintiff pursuant to Montana law, Plaintiff has suffered and continues to suffer substantial injury and damage for which Cincinnati is liable.

/ / /

## COUNT 2 – VIOLATION OF UNFAIR TRADE PRACTICES ACT

43.     Plaintiff incorporates Paragraphs 1 through 42 above as if fully set forth here.  This claim is brought against all Defendants.

44.     The Defendants owe duties to Plaintiff under Montana law embodied in the Unfair Trade Practices Act, MCA §33-18-201, et seq., which governs the conduct and activities of persons engaged in the insurance business in their relationships with insureds and third parties.

45.     The Defendants breached and continue to breach their duties and obligations owed to Plaintiff under Montana's Unfair Trade Practices Act.  Such breaches consist of the conduct described as described above, which is prohibited by the sections of the Unfair Trade Practices Act referenced below, all of which conduct was engaged in by the Defendants with such frequency as to indicate a general business practice:

(1)     Misrepresenting pertinent facts or insurance policy provisions relating to coverage at issue;

(2)     Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(3)     Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

/ /

(4)   Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(5)   Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(6)   Neglecting to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

(7)   Compelling Plaintiff to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

(8)   Attempting to settle a claim for less than the amount to which a reasonable person would have believed the person was entitled by reference to written or printed advertising material accompanying or made part of an application;

(13)   Failing to promptly settle claims if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(14)   Failing to promptly provide a reasonable explanation of the basis in the insurance policy with relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; and

(15)  Improperly attempting to leverage its own interests against those of its insured in settlement of the Arbitration.

46.  The Defendants' actions, as described in the preceding paragraphs, are malicious under Montana law, and such malicious breaches of duties and obligations by the Defendants entitle Plaintiff to an award of all special, general and compensatory damages allowed by Montana law, as well as punitive damages of sufficient size and monetary amount so as to properly discharge and serve the purposes of punitive damages under Montana law.

## COUNT 3 – COMMON LAW BAD FAITH

47.  Plaintiff incorporates Paragraphs 1 through 46 above as if fully set forth here.  This claim is asserted against all Defendants.

48.  The Defendants' acts and omissions as set forth above, past and ongoing, are violations of MCA §33-18-201, and constitute common law bad faith against Plaintiff.

49.  The Defendants have acted and continue to act with malice as defined by the Montana law relative to punitive damages.

50.  As a result of the Defendants' conduct, Plaintiff has suffered and continues to suffer substantial injury and damage for which he Defendants are liable under Montana law, including special, general, compensatory, and punitive damages.

## COUNT 4 – CONSTRUCTIVE FRAUD/ BREACH OF FIDUCIARY DUTIES

51. Plaintiff incorporates Paragraphs 1 through 50 as if fully set forth here. This claim is asserted against all Defendants.

52. The Defendants owed and still owe to Plaintiff fiduciary duties of the highest order, including the highest standards of honesty, full disclosure, and utmost good faith and fair dealing.

53. Violation of such duties constitutes constructive fraud.

54. The Defendants violated and continue to violate said duties repeatedly and intentionally, as set forth above.

55. The Defendants also intentionally and repeatedly made misleading representations, as described above, to Plaintiff.

56. The Defendants gained an advantage through the misrepresentations and failures described above, in that, absent the misrepresentations and failures, Plaintiff could have more quickly completed repairs to the Project and could have timely settled the Arbitration.

57. As a direct and proximate result of the acts of the Defendants, Plaintiff has suffered and will continue to suffer special, general and compensatory damages as set forth above.

58. As a direct and proximate result of the acts of the Defendants, Plaintiffs has been and continues to be denied the full use and enjoyment of the

Project, have incurred and continue to incur costs to investigate, remediate and repair damages to the Project, and have been and continue to be further damaged as set forth above.

59.   Plaintiff will incur additional expenses and damages the exact amounts of which are presently unknown.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Avenue C Apartments, LLC makes demand against the Defendants, jointly and severally, for all special, general, compensatory and other damages available under Montana law, together with interest on money wrongfully deprived from them, and an award of punitive damages, together with attorneys' fees and costs, all of which the Court and the jury find appropriate and fair under these circumstances; and for any additional relief the Court deems equitable and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues so triable in this action.

//

//

//

//

//

DATED this 9th day of April, 2019.

        DATSOPOULOS, MacDONALD & LIND, P.C.


        By:   /s/Trent N. Baker
            Trent N. Baker, Esq.
            William K. VanCanagan, Esq.
            201 West Main Street, Suite 201
            Missoula, Montana 59802
            tbaker@dmllaw.com
            bvancanagan@dmllaw.com

        SNAVELY LAW FIRM


        By:   /s/Donald V. Snavely
            Donald V. Snavely
            P.O. Box 16570
            Missoula, Montana 59808
            snavely@montana.com

        Attorneys for Avenue C Apartments, LLC