**William K. VanCanagan**
**Trent N. Baker**
DATSOPOULOS, MacDONALD & LIND, P.C.
Central Square Building
201 West Main Street, Suite 201
Missoula, Montana 59802
Telephone:   (406) 728-0810
Facsimile:   (406) 543-0134
Email:        bvancanagan@dmllaw.com; jjohnson@dmllaw.com
              tbaker@dmllaw.com; karnold@dmllaw.com
              -and-
**Donald V. Snavely**
SNAVELY LAW FIRM
P.O. Box 16570
Missoula, Montana  59808
Telephone:   (406) 721-8899
Email:        snavely@montana.com

Attorneys for Plaintiff, Avenue C Apartments, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| AVENUE C APARTMENTS, LLC, a Montana limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE CINCINNATI INSURANCE COMPANY, a corporation; and JOHN DOES 1-10,<br><br>Defendants. | Cause No.:  1:19-cv-00037-SPW-TJC<br><br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PARTS OF COMPLAINT** |

Plaintiff AVENUE C APARTMENTS, LLC ("Plaintiff") respectfully submits the following brief in opposition to Defendant Cincinnati Insurance Company's ("Cincinnati") Motion to Dismiss ("Def's M/D") part of the claims in Plaintiff's Complaint.

## INTRODUCTION

This action arises out of catastrophic damage suffered in January of 2018 by Plaintiff's 126 unit residential apartment complex (the "Project") located at 1607 17th Street West in Billings, Montana. (Compl. ¶5)

On August 17, 2017, Cincinnati issued to Plaintiff a commercial insurance package for the Project, which insured among other things property damage to the buildings and business income loss from the Project. (Compl. ¶8) On March 14, 2018, Plaintiff presented to Cincinnati a proof of loss form under the policies. (Compl. ¶13) After nearly ten (10) months, Cincinnati denied coverage for Plaintiff's damage claims.[1] (Compl. ¶34)

After completing a mediation between Plaintiff and the Jackson Group (general contractor for the Project)[2], Plaintiff sought relief for its policy claims against Cincinnati from this Court. (Compl. p. 1) The Complaint alleges claims

---

[1] Two of Plaintiff's claims, for damage caused by roof scuppers and business income loss, are still pending before Cincinnati, awaiting its decision.

[2] Cincinnati participated in this settlement mediation, which only involved claims between Plaintiff and the general contractor. This mediation did not address any of Plaintiff's claims against Cincinnati under the insurance policies.

for (1) breach of the insurance policies (*Compl*. ¶¶ 39-42), (2) statutory relief under the Montana Unfair Trade Practices Act ("MUTPA"), M.C.A. Sections 33-18-201 *et seq*, (*Compl*. ¶¶ 43-46), (3) common law bad faith *Compl*. ¶¶ 47-50, and (4) common law fraud (actual and constructive). (*Compl*. ¶¶ 51-59)

Cincinnati has filed a motion to dismiss, which seeks dismissal of <u>parts</u> of the MUTPA claims asserted in the Complaint. (Dkt Nos. 5-6) While Rule 12 motions to dismiss only address the sufficiency of the complaint to state any viable claim for relief (see Cincinnati's acknowledgment of this point in ¶4 on page 4 of Def's M/D Brief) these legal issues will likely arise later in this case. Thus, Plaintiff has elected to address them now. Plaintiff will address Cincinnati's claims in the order set forth in its brief.

## **SUFFICIENCY OF MUTPA CLAIMS**

Cincinnati asserts that Plaintiff has alleged claims under all fourteen subsections of 33-18-201 (the statutory violation provisions of MUTPA), and that 33-18-242 (the statutory remedy provisions of MUTPA) only authorizes claims by insureds against insurers for claims handling practices under subsections (1), (4), (5), (6), (9) and (13) of 33-18-201. Cincinnati requests the Court to dismiss the claims based upon violations of the other eight subsections of 33-18-201.

It is true that 33-18-242 only expressly authorizes MUTPA claims under the specified six (6) provisions of 33-18-201. However, common law claims which

rely on MUTPA violations as evidentiary support, but not to directly enforce the MUTPA statutory provisions not referenced in 33-18-242(1), are allowed. *Williams v. Union Fidelity Life Ins. Co.*, 2005 MT 273, ¶58, 329 Mont. 158, 123 P.3d 213, quoted with approval in *Mark Ibsen, Inc. v. Caring for Montanans, Inc.,* 2016 MT 111, ¶41, 383 Mont. 346, 371 P.3d 446.   Thus, the allegations in Count 2, based upon MUTPA violations of subsections not referenced in 33-18-242(1), are proper and may be considered upon Plaintiff's common law claims.[3]  However, Plaintiff is <u>not </u>relying upon MUTPA violations of the subsections not referenced in 33-18-242(1) to recover damages, but only as evidentiary support for its common law claims, as permitted in the *Williams* case.

## **ALLEGATIONS CONCERNING COMMON BUSINESS PRACTICE**

Cincinnati next claims that the allegation concerning violations of 33-18-201 "with such frequency as to indicate a general practice" must be striken, based upon 33-18-242(2).  It is true that Plaintiff need not allege this common business practice for claims brought under the six 33-18-201 subsections specified in 33-18-201(1).  See 33-18-242(2).   Because this subsection only applies to "an action under this section", this issue is moot.  Plaintiff agrees to striking the common business practice requirement from its claims under subsections (1), (4), (5), (6), (9) and (13) of 33-18-242(1).

---

[3] The allegations of these statutory violations have been incorporated by reference into Counts 3 and 4 of the Complaint, which are the common law claims of Plaintiff.  Complaint, ¶¶47 and 51.

## **COMMON LAW BAD FAITH CLAIM**

Cincinnati finally requests that Count 3, Plaintiff's common law tort bad faith claim, be dismissed, because 33-18-242(3) prohibits such claims. This position is without merit.

First, as discussed above, a common law bad faith claim does exist where those claims do not seek direct relief for violations of 33-18-201, but rely on such violations for evidentiary support. *Mark Ibsen, supra*, at ¶41, discussing *Williams, supra*. This applies here.

Second, despite the adoption of 33-18-242 in 1987, this common business practice language still appears in all of the subsections of 33-18-201. In adopting MUTPA in 1987, the Montana Legislature did not remove "such frequency as to indicate a general business practice" from the operative subsections of 33-18-201.

As discussed above, common law claims which rely on MUTPA violations as evidentiary support but not directly for relief[4] <u>did</u> survive the adoption of 33-18-242. *Mark Ibsen, supra*, at ¶41, discussing *Williams, supra.* Whether the common business practice requirement survived 33-18-242(2) is debatable. However, the Court may never have to address that issue due to course of discovery in this case.

Second, common law claims based upon violations of the contractual obligation of good faith and fair dealing implied in every contract (such as the

---

[4] This includes all subsections of 33-18-201 excepting only (1), (4), (5), (6), (9) and (13).

insurance policy) survived the adoption of 33-18-242(3).  *Draggin' Y Cattle Company, Inc. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 2019 MT 97, 4/24/19, ¶29 , --- P.3d ----, 2019 WL 1782165.   The Montana Supreme Court in *Draggin' Y*, held (see ¶29):

> "In addition to allowing private rights of action for violations of certain duties expressed in the UTPA, **§ 33-18-242(3), MCA, preserves an insured's common-law right to bring a breach of contract claim. Every insurance contract includes a covenant of good faith and fair dealing. . . . . .** An insured may recover compensatory and consequential damages for breach of this duty in a breach of contract action". [Emphasis added]

Thus, it is beyond dispute that a common law claim for breach of the covenant of good faith and fair dealing implied in the insurance policy also exists. The final question is whether a common law tort claim for breach of the obligation of good faith and fair dealing exists.

As noted above, the Montana Supreme Court in *Williams*, *supra*, and *Mark Ibsen, supra,* allowed common law bad faith claims after 33-18-242 was adopted. In *Mark Ibsen, supra*, decided in 2016, the Montana Supreme Court stated that "purely common law causes of action based upon insurer misconduct are not precluded." *Mark Ibsen, supra*, at ¶41.  While the Court in *Ibse*n ruled that plaintiff did not have a private right to enforce a statute (MUTPA) except as allowed by the statute—see *Mark Ibsen, supra*, at ¶50—, it was careful to note that this rule did not apply to enforcement of common law rights:

'The distinction (between enforcement of a statutory right and a common law right) is not semantical. **A party may always allege and recover damages in a common law cause of action upon proof of a common law claim**, but a party is not entitled to obtain private enforcement of a regulatory statute that is not intended by the legislature to be enforceable by private parties." [Emphasis added]

In short, the Supreme Court cases subsequent to the adoption of 33-18-242 expressly recognize a common law tort bad faith claim against an insurer.

Cincinnati asserts that *Brewington v. Employers Fire Insurance Company* , 1999 MT 312, ¶14, 297 Mont. 243, 992 P.2d 237, supports its position that there is no common law bad faith tort claim for insureds, but just for third party claimants. While the holding of *Brewington* does allow third party claims of common law bad faith, it does not hold that a common law bad faith claim brought by an insured is barred by 33-18-242(3). *Brewington* only involved the issue whether a third party claimant could bring a bad faith claim against an insurer. *Brewington, supra*, at ¶¶12, 14. Further, *Brewington* was decided in 1999, while *Williams* was decided in 2005 and *Mark Ibsen* was decided in 2016. Brewington is not relevant to the issue on this motion to dismiss.

Finally, allowing a common law tort bad faith remedy for third party claimants, but not the same remedy for insureds, would violate Montana's constitutional provision of equal protection under the law.

The test for determining whether a statute treats similarly situated persons in violation of equal protection of the law is set forth in *Kershaw v. Mont. Dept. of Transportation*, 2011 MT 170, ¶17, 361 Mont. 215, 257 P.3d 358:

> "Article II, Section 4 of the Montana Constitution provides that '"[n]o person shall be denied the equal protection of the laws."' The basic premise of equal protection '" 'is that persons similarly situated with respect to a legitimate governmental purpose of the law must receive like treatment.'"' *Satterlee v. Lumberman's Mut. Cas. Co.,* 2009 MT 368, ¶ 15, 353 Mont. 265, 222 P.3d 566 (quoting *Rausch v. State Compen. 363 Ins. Fund,* 2005 MT 140, ¶ 18, 327 Mont. 272, 114 P.3d 192). The initial step in an equal protection analysis is to identify the classes involved and determine if those classes are similarly situated. *Jaksha,* ¶ 16 (citation omitted). '"**Thus, to prevail on an equal protection challenge, a party must demonstrate that the state has adopted a classification which discriminates against individuals similarly situated by treating them differently on the basis of that classification."** [Emphasis added]

Here, 33-18-242(1) provides that both insureds and third party claimants have claims to pursue violations of six specified subsections of MUTPA. However, subsection 3 purports to limit the other non-statutory remedies available to an insured, but not to a third party claimant. *Brewington, supra,* holds that third party claimants have a bad faith tort claim, while Cincinnati asserts that 33-18-242(3) prohibits such a claim for an insured.

There is no apparent reason for this distinction. If the facts underlying the claim and damages are identical, as they are here, there is no reason for allowing the claim in one instance and not in the other. We are <u>not</u> dealing with the issue of

the overall constitutionality of 33-18-242, as a proper police power measure.[5] We are dealing with the different treatment of similarly situated claimants under 33-18-242(3), as interpreted by Cincinnati.

In facing an equal protection challenge to remedies provided, the Court determines if there is a "rational basis" for the distinction made by the statute. *Montana Cannabis Industry Ass'n v. State,* 2016 MT 44, ¶55, 382 Mont. 256, 368 P.3d 1131. The Court in *Montana Cannabis* discussed the rational basis requirement:

> "A classification is not reasonable if it ... "'imposes peculiar disabilities upon [a] class of persons arbitrarily selected from a larger number of persons, all of whom stand in the same relation to privileges conferred or disabilities imposed.'"" *Kottel v. State,* 2002 MT 278, ¶ 55, 312 Mont. 387, 60 P.3d 403 (quoting *Leuthold v. Brandjord,* 100 Mont. 96, 105, 47 P.2d 41, 45 (1935)). To withstand rational basis scrutiny, a legislative classification must rest upon a '"real difference"' and some reasonable consideration of difference or policy. *Powder River Cnty.*"

Montana cases have applied this test to find an equal protection violation where a statute treats the remedies allowed to one group of individuals differently than another similarly situated group. See, e.g., *Goble v. Montana State Fund*, 2014 MT 99, ¶32, 374 Mont. 453, 325 P.3d 1211 [distinction between workers who qualify for disability benefits, and workers who qualify for disability benefits but who are denied those benefits due to incarceration]; *Caldwell v. MACo*

---

[5] One federal case deals with the constitutionality of MUTPA in general, but does not address the difference in remedies provided by 33-18-242(3). *Burton v. State of Montana*, 105 Fed.Appx. 154, 159-160 (9th Cir. 2004). Moreover, *Burton* is a non-precedential decision by court rule, as it arose before 2007. FRAP, Ninth Cir. Rule 36-3(c).

*Workers' Compensation Trust*, 2011 MT 162, ¶16, 361 Mont. 140, 256 P.3d 923 [distinction between vocational rehabilitation claimants eligible to receive social security retirement benefits, and vocational rehabilitation claimants not eligible to receive social security retirement benefits]; *Oberson v. U.S. Dept. of Agriculture, Forest Service,* 2007 MT 293, ¶22, 339 Mont. 519, 171 P.3d 715 [requiring gross negligence to prove liability of snowmobile area operators, but only general negligence for operators of other dangerous sports]; *Snetsinger v. Mont. Univ. Sys.*, 2004 MT 390, ¶27, 325 Mont. 148, 104 P.3d 445[difference between opposite sex and same sex couples in obtaining health insurance benefits]; *Reesor v. Mont. State Fund*, 2004 MT 370, ¶12, 325 Mont. 1, 103 P.3d 1019 [age limitation on disability benefits]; *Brewer v. Ski-Lift, Inc.*, 234 Mont. 107, 762 P.2d 226, 229, (Mont. 1988) [no liability for ski lift operators, while general negligence standard applied to operators of skiing participants].

The simple fact is that there is no rational basis for allowing a tort bad faith remedy to a third party claimant injured by an insurer's bad faith conduct, and not to an insured injured by the same conduct. Plaintiff respectfully submits that 33-18-242(3) should be interpreted to provide a common law bad faith remedy to both insureds and third party claimants "(S)tatutes conflicting with the Montana Constitution are generally subordinate to the constitution and if possible must be interpreted to harmonize with it, *Pengra v. State*, 2000 MT 29, ¶14, 302 Mont. 276,

14 P.3d 499.  If it is not possible to harmonize the requirement of equal protection of the laws with 33-18-242(3), Plaintiff submits that the Court should declare invalid the prohibition of bad faith tort claims to insureds in 33-14-242(3).

## CONCLUSION

Plaintiff respectfully requests this Court to (1) deny Cincinnati's motion to dismiss the MTUPA claims not specified in M.C.A. 33-28-242(1), (2) grant Cincinnati's motion to strike the common business practice requirement under MUTPA, and (3) deny Cincinnati's motion to dismiss Plaintiff's common law tort bad faith claim.

DATED this 24th day of May, 2019.

        DATSOPOULOS, MacDONALD & LIND, P.C.
          -and-
        SNAVELY LAW FIRM


        By:   /s/   Donald V. Snavely
             Trent N. Baker
             William K. VanCanagan
             Donald V. Snavely
             Attorneys for Avenue C Apartments, LLC

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on the 24th day of May, 2019 a copy of the foregoing Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss was served electronically by the Court's ECF notice to parties requesting special notice or otherwise entitled to the same and that in addition service by mailing a true and correct copy via email and First Class Mail, postage prepaid, at Missoula, Montana, to the following persons or entities who are not ECF registered users: N/A

                                        /s/ Trent N. Baker
                                        Trent N. Baker