FILED
11/12/2019
Clerk, U.S. District Court
District of Montana
Helena Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| AVENUE C APARTMENTS, LLC, a Montana limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>THE CINCINNATI INSURANCE COMPANY, a corporation; and JOHN DOES 1-10,<br><br>Defendants. | CV 19-37-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION REGARDING DEFENDANT THE CINCINNATI INSURANCE COMPANY'S MOTION TO DISMISS** |

Before the Court is Defendant Cincinnati Insurance Company's ("Cincinnati") Motion to Dismiss Portions of Plaintiff's Claims. (Doc. 6.) The matter is fully briefed, and after considering the parties' submissions, this Court recommends Cincinnati's Motion to Dismiss be **GRANTED.**

## I. FACTUAL SUMMARY

Plaintiff Avenue C Apartments, LLC (ACA) owns a multi-unit apartment project in Billings, Montana. ACA purchased commercial property insurance coverage for the project from Cincinnati, with an effective date of August 17, 2017. In March 2018, a property loss notice was submitted to Cincinnati, indicating the property had sustained water and related consequential damages in

several areas, with an approximate date of loss of January 5, 2018. Cincinnati denied coverage of the claim.

ACA alleges that Cincinnati wrongfully failed to pay the loss under the policy and violated common law and statutory duties to ACA. Specifically, ACA asserts claims for breach of contract (Count 1), violation of the Unfair Trade Practices Act (UTPA) (Count 2), common law bad faith (Count 3), and constructive fraud/breach of fiduciary duties (Count 4). (Doc. 1.)

Cincinnati moves to dismiss portions of ACA's complaint on the following grounds: (1) Count 2 asserts claims under certain sections of Mont. Code Ann. § 33-18-201 of the UTPA which do not give rise to a private cause of action; (2) a claim under the UTPA for violation of Section 33-18-201 does not require a showing of "a general business practice" as an element, as pled in Count 2; and (3) an insured cannot bring a claim for common law bad faith against an insurer for the handling of an insurance claim, as asserted in Count 3.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Chavez v. Bank of America, N.A.*, 2010 WL 1854087 at *4 (E.D. Cal. 2010) (summarizing the legal standard to be applied to Rule 12(b)(6) motions to dismiss). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal

theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). Here, Cincinnati's motion challenges whether Counts 2 and 3 of the Complaint assert cognizable legal theories.

### III. DISCUSSION

#### A. Count 2: Violation of Unfair Trade Practices Act

Mont. Code Ann. § 33-18-201 of the UTPA regulates an insurer's relations with an insured or third-party claimant and sets forth 14 prohibited claim settlement practices in separate subsections (1) through (14).

The UTPA further provides for a private right of action for violation of certain subsections of this statute under Mont. Code Ann. § 33-18-242(1), which provides as follows:

> (1) An insured or a third-party claimant has an independent cause of action against an insurer for actual damages caused by the insurer's violation of subsection (1), (4), (5), (6), (9), or (13) of 33-18-201.

This section also serves to define and limit the remedies available to an insured based on an insurer's handling of an insurance claim under subsection (3) of the statute, which provides:

> (3) An insured who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under

any other theory or cause of action. An insured may not bring an action for bad faith in connection with the handling of an insurance claim.

Count 2 of ACA's Complaint asserts a claim under the UTPA under all 14 subsections of Section 33-18-201. (Doc. 1 at ¶ 45.) Relying on the plain language of the statute, Cincinnati asserts that Section 33-18-242(1) only creates an independent cause of action against an insurer "pursuant to this section" for violations of subsections (1), (4)-(6), (9), and (13), thereby excluding subsections (2), (3), (7), (8), (10)-(12), and (14). (Doc. 6 at 5.) Therefore, Cincinnati asserts that ACA's claims based on the latter subsections must be dismissed for lack of a cognizable legal theory.

ACA acknowledges that § 33-18-242(1) only authorizes claims under the six specified provisions, but asserts it relies on the remaining subsections as evidentiary support for its common law claims, not to directly enforce those provisions. (Doc. 10 at 3-4.)

The Montana Supreme Court examined the application of Mont. Code Ann. § 33-18-242 in *Mark Ibsen, Inc. v. Caring for Montanans, Inc.*, 371 P.3d 446 (Mont. 2016). The Court reviewed the legislative history of the UTPA and § 33-18-242, concluding that "only a violation of the enumerated sections set forth in Section 242(1) are actionable." *Ibsen*, 371 P.3d at 452. The Montana Supreme Court recognized that, while "purely common law causes of action based upon insurer misconduct are not precluded" by Section 242, "there is a distinction

between pursuing damages for violation of a statute and pursuing an independent common law cause of action." *Id.* at 455. The *Ibsen* Court therefore looked specifically to the plaintiff's complaint to determine whether private enforcement of non-actionable UTPA provisions was being sought, or whether the causes of action were "purely common law." *Id.* at 455. The court determined that it was clear from the complaint that the plaintiff was seeking private enforcement of provisions of the UTPA, not common law claims, and affirmed the district court's summary judgment in favor of the insured.

Just as in *Ibsen*, it is clear from the allegations of Count 2 of ACA's Complaint that ACA seeks to recover damages for violation of the UTPA. ACA alleges that the "Defendants owe duties to Plaintiff under Montana law embodied in the Unfair Trade Practices Act, MCA § 33-18-201, et seq., which governs the conduct and activities of persons engaged in the insurance business in their relationships with insureds and third parties." (Doc. 1 at ¶ 44.) ACA further alleges that "Defendants breached and continue to breach their duties and obligations owed to Plaintiff under [UTPA]. Such breaches consist of the conduct described above [in the Complaint], which is prohibited by the sections of the Unfair Trade Practices Act referenced below. . . ." (Doc. 1 at ¶ 45.) ACA then lists all 14 subsections of § 33-18- 201, and requests damages for "such malicious breaches of duties and obligations by Defendants." *Id.* at 46.

5

Therefore, Count 2 of ACA's Complaint plainly seeks to assert a claim against Cincinnati based upon the alleged violations of all subsections of § 33-18-201; only claims based on subsections (1), (4)-(6), (9) and (13) are permitted by the statute.

Accordingly, the Court recommends all claims asserted in Count 2 under § 33-18-201 not provided for in § 33-18-242(1) be dismissed, specifically subsections (2), (3), (7), (8), (10)-(12), and (14).

## B. General Business Practice

Cincinnati next moves to dismiss and strike language in Count 2 of the Complaint that alleges Cincinnati engaged in conduct "with such frequency as to indicate a general business practice." (Doc. 6 at 5.) Cincinnati points out that the "general business practice" requirement was eliminated as an element of UTPA claims upon passage of the 1987 amendments enacting Mont. Code Ann. § 33-18-242. (*Id.* at 6.) Cincinnati specifically points to § 33-18-242(2), which reads: "[i]n an action under this section, a plaintiff is not required to prove that the violations were of such frequency as to indicate a general business practice." Cincinnati argues that inclusion of the language in a complaint leads to disputes regarding the proper scope of discovery for actions under the UTPA.

ACA concedes and agrees to strike the general business practice language from its claims under Section 33-18-201(1), (4), (5), (6), (9) and (13). (Doc. 10 at

6

4.) As discussed above, these are the only subsections of § 33-18-201 which provide a private right of action under § 33-18-242 and are the only subsections which are not recommended for dismissal. Therefore, the allegation of a general business practice is not material to any of the remaining claims.

Under Fed. R. Civ. P. 12(f) a court may strike any immaterial matter from a pleading. While Cincinnati has not moved to strike under Rule 12(f), the rule permits courts to act *sua sponte*. *See* Rule 12(f)(1) ("[t]he court may act . . . on its own".) Therefore, the Court recommends that the language contained in ¶ 45 of ACA's Complaint reading, "with such frequency as to indicate a general business practice," be stricken.

### C. Common Law Bad Faith

Cincinnati also moves to dismiss ACA's common law bad faith claim in Count 3 of the Complaint. Cincinnati again relies upon the plain language of Mont. Code Ann. § 33-18-242(3) which states "[a]n insured may not bring an action for bad faith in connection with the handling of an insurance claim." (Doc. 6 at 6.)

Nevertheless, ACA argues that it may maintain a common law bad faith claim, if they do not seek direct relief for violations of § 33-18-201, "but rely on

such violations for evidentiary support" of other claims. (Doc. 10 at 5.) Next,[1] ACA argues that despite § 33-18-242(3), claims based on the implied contractual obligation of good faith and fair dealing survive that section's adoption. (*Id.* at 5-6.) Lastly, ACA asserts that allowing a third-party claimant to assert common law bad faith claims against an insurer, but not allowing insureds to do so, violates "Montana's constitutional provision of equal protection under the law." (*Id.* at 7.)

With respect to its first argument, ACA relies heavily on the Montana Supreme Court's decisions in *Williams v. Union Fidelity Life Ins. Co.*, 123 P.3d 213 (Mont. 2005) and *Ibsen*, 371 P.3d 446. In *Williams*, the district court dismissed an insured's bad faith claim on the grounds that it was expressly barred by § 33-18-242(3). The plaintiff argued on appeal, however, that the alleged bad faith occurred during the application process. Therefore, the plaintiff argued that the prohibition against bad faith claims under Mont. Code Ann. § 33-18-242(3) did not apply, because that section governs remedies based on the handling of claims, not the application process. Without elaboration, the Montana Supreme Court agreed, and found § 33-18-242(3) did not bar the plaintiff from bringing a bad faith claim on retrial. *Williams* has subsequently been understood to stand for the proposition that "an insured may bring a common law bad faith claim against an

---

[1] ACA's "second" argument seems to address the previous section dealing with "general business practice" and will not be discussed again here.

insurer for conduct that does not constitute 'the handling of an insurance claim.'" *Haskins Const., Inc. v. Mid-Continent Cas. Co.*, 2011 WL 5325734, at *6 (D. Mont. Nov. 3, 2011)

That is not the case here. Unlike *Williams*, the entirety of ACA's factual allegations rest on activities occurring after the effective date of its policy with Cincinnati, and take issue with the handling of the claim, not prior or unrelated activities. (Doc. 1 at ¶¶ 8, 13, 15-26) In short, ACA's claim is directed solely at the claims handling process and is thus squarely within Section 33-18-242(3)'s prohibition of bad faith claims.

ACA's reliance on *Ibsen* is also misplaced. As discussed above, *Ibsen* recognized that "purely common law causes of action based upon insurer misconduct are not precluded" by Section 242, while claims pursuing damages for violation of the UTPA are subject to its limitations. Here, ACA's claim is clearly predicated exclusively on duties imposed by UTPA. In fact, ACA cites Mont. Code Ann. § 33-18-201 as the sole source of any duty ACA seeks to enforce in its bad faith claim. ACA alleges "[t]he Defendants' acts and omissions as set forth above . . . are violations of MCA § 33-18-201, and constitute common law bad faith against Plaintiff." (Doc. 1 at ¶ 48.) As with ACA's UTPA claim in Count 2, ACA is plainly pursuing damages in Count 3 for violation of Section 201.

Regarding ACA's second argument, ACA highlights a statement made by the Montana Supreme Court in *Draggin' Y Cattle Company, Inc. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 439 P.3d 935, 943 (Mont. 2019): "§ 33-18-242(3), MCA, preserves an insured's common-law right to bring a breach of contract claim. Every insurance contract includes a covenant of good faith and fair dealing." The Montana Supreme Court also made clear, however, that the appropriate remedy for breach of this covenant is a breach of contract action. *Id.* ("An insured may recover compensatory and consequential damages for breach of this duty in a breach of contract action.")

Cincinnati acknowledges that ACA's breach of contract claim may include an alleged breach of the implied covenant of good faith and fair dealing, and makes clear it is not seeking dismissal of ACA's breach of contract claim in Count 1 of the Complaint. Cincinnati's motion is directed to ACA's bad faith tort claim in Count 2, which § 33-18-242 explicitly proscribes.

ACA's third argument is that while § 33-18-242(3) bars bad faith claims by insureds, it does not do so for third-parties. See *Brewington v. Employers Fire Insurance Company*, 992 P.2d 237, 240 (Mont. 2000) (Mont. Code Ann. § 33-18-242(3) does not prohibit a third-party from bringing action for common law bad faith). ACA contends that this disparity in available remedies constitutes a constitutional violation under "Montana's constitutional provision of equal

protection under the law."[2] (Doc 10 at 7.)  ACA argues that there is no rational basis "for allowing a tort bad faith remedy to a third-party claimant injured by an insurer's bad faith conduct, and not to an insured injured by the same conduct." (*Id.* at 10.)

ACA makes precisely the same argument presented in *Burton v. State Farm Mut. Auto ins. Co.*, 30 M.F.R 173, 179-83 (D. Mont. 2002), *aff'd* 105 Fed. Appx 154 (9th Cir. 2004).  Like here, *Burton* argued the UTPA "is unconstitutional as an irrational exercise of state power because it bars claims by insureds that third-parties may bring." *Id.* at 178.  U.S. District Judge Donald W. Molloy agreed with *Burton* that § 33-18-242(3) "intentionally distinguishes between insureds and third-party claimants." *Id.* at 184.  Nevertheless, Judge Molloy determined that there was a rational basis for the distinction.  He pointed out that "[t]he stated legislative goal of the UTPA is to offer predictability to insurance companies and their insureds, foster a more positive business climate, retain insurance companies doing

---

[2] Cincinnati also argued that ACA did not conform to Fed. R. Civ. P. 5.1, which requires notice to the Montana Attorney General of any challenge to the constitutionality of a state statute.  ACA subsequently filed its "Notice of Constitutional Challenge to M.C.A. 33-18-242(3)" on June 6, 2018 (Doc. 15), and the Attorney General's 60-day time period to intervene has expired.  *See* Fed. R. Civ. P. 5.1(c).  Pursuant to F. R. Civ. P. 5.1(b), the Court also provided a certification to the Attorney General that the constitutionality of a state statute was being questioned.  Because the constitutional challenge has been rejected, however, this matter will not be delayed further for the Montana Attorney General's intervention before ruling.  Fed. R. Civ. P. 5.1(c) ("Before the time to intervene expires, the court may reject the constitutional challenge . . . .")

business in Montana, and, ideally, lower rates for insureds." *Id.* at 185. Judge Molloy found each to be a legitimate goal of state government, and he concluded that the limitations in the UTPA are rationally related to promoting those goals. *Id.* at 186. He also pointed out that there are several available first-party causes of action available under the UTPA, including those which allow the recovery of actual and punitive damages. *Id.* at 187. Thus, it was determined that the statute did not violate equal protection.

This Court agrees with Judge Molloy's analysis. The codification of available remedies and the limitations on causes of action under the UTPA are rationally related to legitimate goals and do not violate the equal protection clause of Montana's Constitution.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

(1) Cincinnati's Motion to Dismiss (Doc. 5) be **GRANTED** as to Count 3, and as to those claims in Count 2 based on Mont Code Ann 33-18-201(2), (3), (7), (8), (10)-(12), and (14); and

(2) ACA's allegation contained in Count 2 (Doc. 1, ¶ 45), reading, "with such frequency as to indicate a general business practice," be **STRICKEN** from ACA's Complaint.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 12th day of November, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge